The 4th District Appellate Court of the State of Illinois has now convened. The Honorable John W. Turner presiding. Thank you. Good afternoon. We are here on People v. Bennett. That's case number 4-2-2-0-3-2-5. Would counsel for the appellate please identify yourself for the record. Edward J. Wittreg on behalf of the appellate. Thank you. And counsel for the appellate, will you please state your name for the record. Thank you, Your Honor. David Robinson for the People of the State of Illinois with a 7-11 student from our legal clinic. And good afternoon. My name is Akram Gensh. I'm from the University of Illinois 7-11 students. Excellent. Welcome. All right. Mr. Wittreg, you may proceed with your argument. Edward Wittreg Your Honors, may it please the court. My name is Edward Wittreg. I'm with the Office of the State Appellate Defender. I represent the petitioner appellant, Mr. Robert Bennett, on this appeal. So in this case, around 1240, excuse me, 1240 in the morning, Mr. Bennett was in the passenger seat of a vehicle that was parked outside Camp Point Tire. And this was a business owned and operated by the Leary family. Mr. Bennett was waiting for his friend, Larry Leary, who was inside the building and was either an employee or part owner of that business. While Mr. Bennett was waiting, Officer Summers approached the vehicle and then talking with Mr. Bennett and along with Mr. Chad Taylor, who was another occupant of the vehicle. Mr. Wittreg, do you raise any question about the legitimacy of the officers going up to that car to speak to the occupants? I do not, Your Honor. I do not. Okay, go ahead. So during this initial conversation, Mr. Summers believed that he smelled the odor of cannabis. And so then when another officer arrived at the scene, Bennett was directed and pulled from the vehicle to be frisked for a weapon and subject to a search. At that time, there was no suspicion at all that Bennett was armed in any way. And the smell of cannabis did not provide any basis for seizing Mr. Bennett, patting him down and searching him as a result. Let's roll back a little bit. Go ahead, Justice Stegman. Well, going just to that point, we have the findings of the trial court in front of me, in which the court said, among other things, once the officer smelled the odor of cannabis, his inquiry can change for an actual investigation of a crime, which was an awful possession of cannabis because cannabis is contraband that, quote, is only legally possessed in a home or in a sealed package where it can be smelled, unquote. And then once he is possessed of that information, is legally able to search the vehicle and its occupants. Are you disputing the finding that the trial court made that the officer, actually both officers, ultimately smelled the strong odor of cannabis from the car? I am not disputing that. Okay. Well, then, I don't know that you specifically addressed this written finding or old finding by the trial court about the smelling the odor of cannabis, other than you seem in your brief to argue that this court, recently in Molina and Hall, having rejected Stribling, should reconsider and go back to accept what Stribling said. So, my question is, if we don't, if we think Molina and Hall are correct, is that the end of this case? Do you lose? No, your honor. I distinguish Hall and Molina are both distinguishable because they involve raw cannabis instead of burnt cannabis. And additionally, they both were traffic stops, where this was not a traffic stop of a moving vehicle. And so, there was no, there wasn't the same suspicion that there was an unlawful transport violation that there would have been in Molina and Hall, which both involve police officers conducting a traffic stop. It's a non-residential address. How did they get it there? I mean, isn't that the normal inference? No, your honor. While Mr. Bennett did drive, or it wasn't a vehicle that was transported to that residence, and that was related to the officer, there was no indication of how long Mr. Bennett was there. And so, the cannabis easily could have been concealed, or excuse me, not concealed, in a sealed container until Mr. Bennett then used it outside of the vehicle in the manner that he did, and there wouldn't have been any unlawful transport violation. Well, can you go back to your assertion that he was ordered out of the car? Because I don't know that you have a factual finding that supports that. Yes, your honor. The testimony was that he was directed from the car, and that was from the vehicle, and that the officers got him out of the vehicle. And I would argue that there was a factual finding that he was seized. The circuit court found that at the time that he was taking out of the vehicle for the pat-down, that the defense motion would have been granted but for the smell of cannabis and that giving probable cause. Well, counsel, going back again, if Malina and Hall apply to say that there's probable cause to search the car, there's a case law from this court that says there's probable cause to search based upon smelling cannabis. You can search not only the driver but the passenger as well. Wouldn't that be a sufficient basis by itself to tell the occupants of the car, get out because I'm going to search it? Yes, your honor. If this court does apply, if it chooses to apply Malina and Hall, and that there is probable cause based on the odor alone, and it rejects the position raised here and my reliance on Stribling and Redmond that there is no probable cause based on the smell of cannabis, then in that instance, yes. Well, we know that the car was sitting in the parking lot at 1230 and he went up and talked to them and smelled the cannabis. He was also then told, was he not, that they're waiting for someone who just went into the business that worked there to get something out? Yes, your honor. Now, wouldn't that cause a reasonable inference on the part of the officers that they weren't there very long while having dropped off this passenger and waiting for him to come out? No, your honor, because there could have been plenty of time for Mr. Bennett or anyone else to then consume cannabis on the premises and then it wouldn't be. The point is, we're talking about, there wasn't a traffic stop. Going back to Justice Darby's question about, they had to get there from someplace and no doubt from the highway, which was a few hundred feet away. And since the car was, I don't know if I remember correctly, was either still, the ignition was on or lights were on or something was on. The reason one, for instance, seems to me among other possible, but we're talking about what a reasonable officer might think is that car hadn't been there that long off the highway while waiting for this guy who just wanted to get something and come back up. Why wouldn't that be a reasonable inference for the officer to draw? And your honor, just to clarify, the parking brakes were on, but the headlight was off. And I think that... Going back to my question, why would it be a reasonable inference for the officer to draw that they weren't a long time off the highway into the parking lot while waiting for this guy and this otherwise closed business to go in, get whatever he wanted to get, come out. In fact, he did come out pretty quickly, didn't he? The record is unclear precisely when he did come out, but I understand your point there. Well, in fact, if the officers believe that this car contained can of strong odor or cannabis, two of them, and had, if not that moment on the highway, then within a matter of minutes upon the highway, why wouldn't the equivalent of a traffic stop situation apply? Well, and I know your owner has... This court has rejected some of the reasoning and shriveling, but the shriveling court did find that the strong smell of burnt cannabis cannot be directly tied to a current usage because of its possibility that it... You're too kind, counsel. We didn't reject some of its reasoning. We rejected all of its reasoning. So let me go back to my question. Why would it be improper for the officer to conclude that it had only been a few minutes, if that, from the time the car had been on the highway until it pulled into this parking spot and that the strong odor of cannabis that officers smelled is reasonably attributable to the highway time that the car was on? Your Honor, the officers did not have any information how long the car had been there at all. And the headlights were off indicating possibly that it had been there for some time. And given the amount of different uses that are legal now for cannabis, it couldn't be assumed that it wasn't consumed elsewhere before they even got into the vehicle or that once they arrived at the location, then Mr. Bennett or others consumed cannabis. There's no direct tie. Well, the law is pretty clear, counsel, that the police are not required to rule out reasonable inferences or to look for bases upon which to deem otherwise suspicious behavior or criminal behavior to be not criminal. The police don't have to come up with explanations for it. Instead, the hallmark of the Fourth Amendment is reasonableness, which is why I keep asking that question. What was unreasonable about the police being confronted the situation to assume that this car had only recently been off the highway? Wouldn't that be consistent, for instance, with the fact that you just dropped someone off to go in a place and get it? And in fact, he came out pretty quickly, didn't he? Your Honor, my point here is that cannabis can be consumed fairly quickly. Yes, it can. Why would it be unreasonable for the police to conclude that it was being consumed as the car was being driven on the highway? Or transported. Or transported, yes. And, Your Honor, I have to stand on the fact that because it can be consumed so quickly and the officer would not have any indication of how long the vehicle had been at the residence. And so, or excuse me, the business. And without knowing that, there are just too many possible legitimate and legal uses of cannabis that could have consumed without it being in the vehicle. Was this issue discussed or presented or ruled on by the trial court, namely how long the car did in the parking lot? And the other time factors we were talking about, whether or not, for instance, the cannabis odor could have come from transport or use while the car was on the highway as opposed to the parking lot was indeed was even that raised by the defendant as a reason to suppress the evidence. No, Your Honor, the circuit court found that once the officers detected the odor of cannabis, that alone gave them probable cause. And so there was no specific finding as to these other factors. Did the defendant at trial say, well, wait a second, Judge, that's an improper conclusion because he was sitting in a parking lot. It wasn't a traffic stop and the car wasn't on the highway. The fact that it was not on the public way or it was in public was raised before the circuit court, but the circuit court did not alter its conclusion. Go ahead. If you wouldn't mind just addressing the pat down itself, let's put aside the seizure of the vehicle or whether there was ordering or voluntary leaving of the car. He told the officer he had a blunt in his pocket. At that moment, doesn't the officer have probable cause not just to investigate but to arrest? Your Honor, well, first of all, it's not clear when this admission about having a joint in his pocket was actually made, whether it was made before or after the pat down had actually started. And there's a discrepancy in between depth or excuse me, office summers and officer Dolman's testimony on that issue. And even if he does admit that there is a joint in his pocket, while he was inside the vehicle, it still is not improper to transport a joint as long as it's in a secured sealed or resealable container or it's reasonably inaccessible. So it couldn't be in his pocket while he was driving or while the vehicle is moving, excuse me. And again, there was no evidence that the vehicle was moving at that point. And I do want to make sure here that I address argument two as well. So if there are no other questions on argument one, I will address. I still have some questions on argument one. When did Learley come out? And I'm asking, did he come out of the tire store before defendant was asked to exit the vehicle or was it afterwards? There is a discrepancy between the witnesses and the circuit court never found a basis or a need to rule on that specific issue because it found the probable cause based on the smoke cannabis alone. Your honor. Was he outside the tire store at the time your client admitted that he had marijuana on his person? That is not clear from the record or the specific timing of when Learley came out outside. It was sometime between, well, there at least is a discrepancy that it could have occurred before or after that point, your honor. There's some evidence then that Learley was outside of the store and was in the area of your client and the other person at the time that the pat down occurred, right? So your honor, Bennett, I believe testified that Learley was not outside before Dolman arrived to pull him out of the vehicle. But then in contrast, Summers testified that Learley came out before they were pulled from the vehicle and pat down. That answers your question. Yeah, it sounds like then that what your client testified to was different than what the officers testified to. Would that be accurate to say that? Yes. Yes, your honor. Okay. I also had a question with regard to the stipulated facts, which I think is kind of where you were going a second ago before I interrupted you. But was the fact that your client, after he went to the police station and admitted that he had given the meth to other people, not necessarily sold, but given it to other people, was that in the stipulated facts or is that just something that was included in the brief? Your honor, say again. Was that before the trial court? No, no, your honor. That fact was not before the trial court at all. It was not part of the stipulated evidence. It wasn't presented at the motion to suppress hearing, which was the basis for the stipulation. I believe that fact was found in a police report that was not submitted to the trier of fact for consideration. Okay. Thank you. Yes, your honor. So addressing argument two here briefly, I would also ask as an alternative argument that this court reduced Mr. Bennett's conviction from possession with the intent to deliver to just a straight possession conviction. The state was required to prove beyond a reasonable doubt that Mr. Bennett actually intended to deliver the methamphetamine that was found in his possession. The stipulated evidence was that the amount of methamphetamine was 73.9 grams and that a scale was found, but the amount of methamphetamine without any additional information for the trier of fact to continue doesn't provide a basis to conclude just that quantity alone is inconsistent with personal use without information. So what does that speak to? I am so sorry, your honor. Can you mention the scale being found? What does that speak to? That hardly is a suggestive of individual use. You don't need a scale to weigh out your individual uses. Your honor, a scale can also be used by a buyer to ensure that they are receiving the amount of methamphetamine that they have purchased. And here it could also be tied to the cannabis use that was later found evident in the vehicle rather than the methamphetamine. And again, I think it's important here that the state didn't provide any expert opinion on methamphetamine distribution or trafficking that would have provided the grams of methamphetamine was inconsistent with personal use. There's nothing about dosage units or isn't that an awful large amount of methamphetamine, counsel? Not for a trier of fact to conclude without any additional information, your honor. So if it were three pounds of methamphetamine, the court could draw no inferences, absent expert testimony. And your honor, can I answer your question? I see my time has run out. So the Contreras court that was cited in the opening brief did find that a certain amount can arise to a level where there's no expert opinion needed, but that was, I believe a pound. And it's a lot more than the, the amount that was found here. And so there is, I'm sorry. Does that answer your question, Justice Steinman? It does. Thank you, sir. Okay. Ms. Ritter, you're out of time, but you'll have rebuttal as you know. Mr. Ginch, did I pronounce that correctly or at least close? Yeah, that was perfect. Thank you. You may proceed with your argument. May it please the court, counsel. My name is Akram Ginch. I'm a 711 student from the people of the state of Illinois. Starting with the fourth amendment issue, which is the sort of main crux of the defendant's appeal. The entirety of police interactions in this case is an exemplary behavior that this court should take the opportunity to affirm. Starting from the initial acted in accordance with what was required of them. In terms of the legal framework, Peeper v. Ludeman provides a three-tier analysis, starting with the first tier that requires probable cause for an arrest. Lower is the second tier, which is a Terry Sapa brief investigatory detention. And finally, a consensual encounter. As Mr. Bennett conceded, the initial approach was fine. The entirety of the first steps taken by Deputy Summers from recognizing there's a closed business and there's a car parked outside of it past midnight. Deputy Summers approached the vehicle, started asking questions. There were no fourth amendment implications here. It was a consensual encounter. They're asking counsel to put this in the context of the search of the individual, which is where the contraband was located. When do you believe the law enforcement had the authority to conduct that search? At what point? So, Your Honor, this is actually a very important question because the defendant hasn't really specified when exactly his rights were violated. Our position is that at every step of the way, officers Dolman and Summers were justified. So, in the moment that Deputy Summers smelled the Molina and Hall, but they didn't go straight to an arrest. They actually started with a very low tier consensual encounter. Deputy Summers initially tried to get some information to pinpoint who the cannabis odor was coming from because there were two individuals in the car with Mr. Bennett in the passenger seat and Mr. Taylor in the driver's seat and the car belonged to Mr. Bennett. So, Deputy Summers asked a few questions to clarify. Mr. Bennett refused to answer initially and Deputy Summers didn't escalate the situation. He simply tried to get more information and realized, first of all, there is the potential burglary happening and secondly, there's the improper use and possession of cannabis. At this point, Deputy Dolman came in and Deputy Summers asked Mr. Bennett to step out of the vehicle because he wasn't able to ascertain any information about who was using the cannabis, whether there was in fact a burglary going on and they were outnumbered, which is another factor to be considered in the totality of the circumstances. So, at every step of the way, we see a reasonable lowest possible interaction between the deputies and the suspects on the scene. When Mr. Bennett stepped out of the vehicle, he could argue that he was seized, but the legal analysis that the standards of which were set in Bostick and Mendenhall, the analysis can actually show that to also be a consensual encounter where Mr. Bennett was not forced to step out of the vehicle. He was requested to step out of the vehicle and the deputy... Counsel, let me ask you a question. If the officer says, Mr. Bennett, please step out of the vehicle, is that an order or is that a request? That is an order, I would say, but I think the record shows Mr. Bennett was asked to step out of the vehicle and he didn't really refuse at any point. Okay, well then, if that is an order, how would an officer simply make the request to a suspect to step out of the vehicle? The request could be in the form of a question, Your Honor. Deputy Summers, I believe, asked Mr. Bennett, could you step out of the vehicle? And Mr. Bennett didn't say no. However, I understand that the record's ambiguity shouldn't lead this court to just... Well, let me stop you again. A reasonable person stopped by a police officer or confronted by a police officer in a car is speaking with the officer and the officer said, would you step out of the vehicle? Would a reasonable person think that they had any choice other than to step out of the vehicle? Your Honor, according to the BOSTIC standard, the standard assumes a reasonable innocent person and a reasonable innocent person could initially at least say, no, I don't want to leave my car, why are you questioning me? And we do see that sometimes. However, even if this court decided that this was a seizure, it would be a second tier encounter, which requires only reasonable articulable suspicion of a crime and not probable cause. Okay, I want to stop you again there. So is it your argument that in order for the officer to request the person to exit the vehicle, it only requires, under these circumstances, reasonable suspicion versus probable cause? Yes, Your Honor. Because for a second tier encounter, and in order to escalate a consensual encounter, which is the third tier, into a second tier encounter, for occupants in a vehicle, we have plenty of precedence in people v. Murray, Florida v. BOSTIC, people v. McDonough. I refer to these cases in our brief as well. The police can have evidence upon their consensual encounter that leads them to believe that there are facts at play, which would lead a reasonable person to conclude that the person that the police is facing might have, or is about to commit a crime. In this case, there were two different justifications for this standard. One of them was burglary. Deputy Summers initially approached the scene having thought of this Mr. Bennett's avoidant behavior. The second suspicion was when Deputy Summers approached the vehicle, even before he started talking with them, he smelled cannabis, which is its own criminal analysis. Do you agree that this was burnt cannabis, the odor I mean, as opposed to raw either one? However, the court below did find, as a factual finding, that there was the smell of cannabis. Mr. Bennett attempts to draw the distinction between raw and burnt cannabis in terms of probable cause. This court in Molina and Hall decided raw cannabis cases. However, their reasoning was based on Stout, the Illinois Supreme Court case. That court actually handled a burnt cannabis case. Regardless of whether the cannabis was burnt or raw, there is a probable cause that either the cannabis was possessed unlawfully or consumed unlawfully. I think the defendant's point is that it could have been transported lawfully and consumed, and that there So, Your Honor, the motor vehicle code is only one of the statutes at play. The second statute is, in fact, perhaps a better statute for this case, the Cannabis Regulation and Taxation Act, which not only touches on possession, which refers to the sealed odorless container, but also the consumption element. And it explicitly says that cannabis cannot be consumed in public places. And the statute also defines what a public place is, and the public place is a place where a person reasonably expects to be, a person is, I'm sorry, a person can expect to be reasonably observed by other people, which the public parking space is a public space by that definition. So, someone cannot simply smoke anywhere they please. The Molina, to quote from the decision of this court, refers to the harmonious reading of statutes, and the legislation did not intend to completely legalize cannabis use and possession. And the CRTA reflects that in its product can be consumed. That's a question I would like to follow up on. I asked Mr. Wittrig about time factor regarding the stop and sequence of events, and he was not able to provide definitive assessment of all that. And I'm wondering if you can do, provide more definitive assessment than he, that is, do we know what does the record show about how long this car was in the parking lot and off the highway? And how long was the car sitting there observed by the police until the third party who had gone into the tire store came out? And do we, the other question I suppose is, was there any discussion in the record about these time concerns at the hearing on the motion to suppress or by the trial court? In other words, it seems to me that this would be a case where the court could have made findings independently, but I conclude the police, and whether the police were asked this as well, how long do you think this car had been sitting there? What did the trial court think? To what extent, in other words, were the rules governing a vehicle on a highway concerning containing marijuana no longer applicable because it wasn't there? So was, has any of this discussed? And more specifically, it seems to me that we don't have an argument at the trial level that the vehicle code and other provisions prohibiting the transportation of cannabis don't apply here because the car was in a parking lot. I don't know that the defendant ever raised that or addressed it to the trial court. It doesn't seem to me that the trial court ever responded to it, perhaps for that reason. So to what extent are we then left to all this? And to make my position clear, it seems to me that if the rules apply, perhaps because of the time factor for the car sitting in the parking lot, the court could infer that the car was only recently off the highway, then all the rest of this discussion doesn't because there's probable cause to search, meaning the passenger and driver both say, get out of the car, pat him down, search him. And then what was discovered would be no issue. But I suppose what I'm saying is, what does the record address any of this? The court address it? What's the time factor? Can you provide any more detail on any of this than Mr. Richard was able to provide? Your honor, I will try my best in terms of showing you the context. Our reading of the of the record is more with citations is reflected in our brief. And it seems that Mr. Bennett was there for a short time and was about to leave the place in a short time after uh at the point where some Mr. Deputy Summers uh saw the vehicle and the reasoning my short time um probably a few minutes because it seems like Mr. Learley was there to get his money from the business and they were just on their way to somewhere else um but it doesn't it's not this positive of the case uh whether they were there for a long time or a short time because CRTA does not allow um consumption of of cannabis where Mr. Bennett was uh secondly even if this is sitting in a parking lot of a closed business after midnight uh is a public place I'm not so sure that applies if it's not a public place or they're going to be observed then CRTA wouldn't play with it your honor the um respectfully the parking space was just off the road and it was open to Deputy Summers observation as he was driving by I thought it was a few hundred feet off the road um I believe it was even a little more than that but um it was like 420 something however Deputy Summers was able to observe them uh from from that distance but it doesn't it's it's it's not um it doesn't end our analysis if we decide that um Mr. Bennett was uh there for a long time because the trial court below found that there was probable cause once Deputy Summers smelled marijuana coming from the vehicle and uh Deputy Summers had a reason to be there uh Deputy Summers had a suspicion of burglary and Mr. Bennett does not um does not take issue with Deputy Summers approaching the vehicle uh and the place itself it's not a residential area it's akin to uh the parking lot of a public park for example it's it's it's a place where police officers can go uh just like any other citizen can go it's not a gated area and when Deputy Summers approached the vehicle is when he had both reasonable articulable suspicion that there was a burglary potential and probable cause that there was uh unlawful uh use and possession of marijuana um and it doesn't uh for our analysis because every step of the way is justified even if uh the probable cause um this even if this court does not find the officer had a probable cause there was still the reasonable articulable suspicion of burglary and and marijuana possession and use that allowed Deputy Summers to ask Mr. Bennett to step out of the vehicle and consequently pat him down. Reasonable articulable suspicion was there the whole time and um Mr. Bennett confessed to having meth in his pocket during an outer clothing pat down. He confessed to meth or the blunt? To both. So when Mr. Bennett stepped out of the vehicle he he said that he was smoking marijuana that he had a medical cannabis card and he tried to sort of explain his situation because Mr. uh Deputy Summers initially said we suspect burglary and then when Mr. Bennett stepped out of the vehicle Deputy Summers said hey we also smell uh marijuana and Mr. Bennett started to explain himself. It wasn't until uh Deputy Summers announced he was going to do a pat down that Mr. Bennett shuffled things in his pocket and when uh Deputy Dolman uh asked him if if he was sure it was just weed uh Mr. Bennett said no it's it's dope which is it's meth. So at every step of the way uh the officers used the very minimal uh amount of uh coercion necessary and um they had reasonable articulable suspicion to conduct brief uh investigatory questioning um that even without probable cause uh would justify their their actions. However by this court's precedent oh yeah the defendant raises some question about the pat down and claims that the record is devoid of any claims by the police officers that they felt threatened or they needed for their own safety to pat the defendant and the other occupants down. What about that? So in terms of what the officers have subjectively felt the Terry pat down for weapons and safety doesn't require a subjective belief from the officer who conducted the pat down. It's the analysis is rather whether a reasonably prudent person would feel safe and in this context there a lot of precedents uh from the seventh circuit from the state of Illinois about cases of burglary specifically um where late at night in an isolated place where the deputies are outnumbered by suspects it is a situation in which a reasonably prudent person would be um would be justified in because the issue here is that officers are trained to handle uh dangerous people at all times and it might not automatically trigger in them a fear mechanism. Some of them uh have been doing this for a long time but a reasonably prudent person late at night surrounded by three strangers especially suspecting burglary which involves tools that can be used as a weapon uh here there also the vehicle that could have been used dangerously uh the officers would be justified uh therefore the court below decisions should be uh affirmed. Thank you. Counselor you're out of time but I have a question I need to ask you because I brought it up to opposing counsel and in your brief I'm quoting you say although Bennett denied selling methamphetamine he stated in police custody that he gives it to some of his friends. Was that before the trial court? That was. That's not something would you agree that's not something that we should or can't consider with regard to whether he had the intent to deliver? Your honor to quickly answer your question the the statement comes from uh the police record the police record that was present before the trial court whether they explicitly cited to it or not and this court can affirm on any basis and in the standard of review which is light in the light most favorable to the state the other factors even without considering that would allow uh this court to conclude that a rational trier effect could find uh beyond a reasonable doubt based on the sheer amount of methamphetamine as well as the scale as well as the fact that it was divided in two baggy. Okay you are out of time I'll have to look and see if there's a case that says the amount alone without some additional evidence is enough but um if I might follow up on that counsel um as you might imagine the three of us have not developed that expertise to know what is a reasonable amount or not a reasonable amount what is uh amount for personal consumption how are we supposed to determine that when the record doesn't tell us that? So your honor there is actually a few cases that grappled with this issue but the sheer weight allowed the trial effect the trier effect to determine for without with beyond a reasonable doubt certainty uh people versus Rivera I can point you to people versus Robinson um in both of these cases the idea is that the more weight means uh the more uh the less other evidence you need the Mr. Bennett admitted himself uh in his testimony that he owned the the the scale he was out of state um and these factors along with the two baggies uh would give this court the justification necessary and in people versus Rivera the amounts were always less than 30 grams here we have 73.9 grams so there really isn't um a lot of room for doubt here uh for a rational fact thank you thank you for your argument rebuttal please thank you your honors first I would like to uh address um the facts that were in the police report those were not presented to the trier effect at the motion to suppress hearing or what were considered part of the stipulated evidence that was at the bench trial the police reports were just simply used to refresh recollections of the officers and so the trier effect would not have been aware of the facts that were contained therein were they admitted into evidence it was not admitted into evidence your honor and then I would also like to point out that there was no reasonable suspicion that a burglary was occurring um and I in my brief I rely on the Gallagher which was officers approaching a closed gas station after um in the morning after it closed and that that fact alone did not provide the the officers with reasonable suspicion that a burglar was occurring to detain uh the the defendant in that case and then similarly there was no reasonable suspicion to detain for a um before pat down for for weapons there were at least two officers at the scene when mr bennett was pulled from the vehicle and they're either two suspects or potentially three reported suspects depending on when leary exited the building which as we discussed earlier was was not clear from the record and so they're released numerically matched and mr wittrigg with respect to his exit from the vehicle um he felt confident enough that he could decline questions from the officers does that not suggest that when he left the vehicle that was because he decided he would comply with what the officers were asking no your honor and his testimony I believe is that he got pulled from the vehicle which would connotate um more than just a simple request but there's no factual finding on on those two conflicts right no again your honor the the court found that because there was probable cause it did not need to um but it the circuit court did find that absent the um absent probable cause based on the smell of cannabis it would have granted the defense motion to um suppress which indicates that it at least found that there was no reasonable suspicion that mr bennett was armed and so I want to go back to the question I asked initially about the finding in the trial court how the officers smelled the odor of cannabis and that uh then established probable cause search when a defender makes a motion to suppress it's his burden to demonstrate that the constitution was violated its fourth amendment rights were violent and one of the things about this case is the trial court made this finding and in your discussion today you attempt to draw the distinction between a car on the highway and the applicability of the only vehicle code and the um other things that apply that this court discussed in Molina and Hall and say well that doesn't necessarily apply here because this car was in a parking lot even though there's every reason to think uh it had been in the parking lot for some period of time I'm not sure how short of time but um wasn't this a burden on the defendant that he failed to establish to show that the rules governing the use of cannabis in the automobile don't apply here because he wasn't on the highway he was in a parking lot and to establish that by bringing forth the various time factors I brought out such as some testimony of uh well we sat in the parking lot for 20 minutes no one was smoking or using marijuana prior to uh being there or um not uh we weren't doing it while we're in the highway words to this effect because in effect what you're now arguing is we shouldn't accept the trial court's finding because it wasn't on the highway even though the record isn't at all clear of that and the you didn't present any evidence on it that is your client and the trial court as a matter of fact was not given an opportunity to evaluate the testimony or draw inferences from various witnesses to decide the important question of had it just been a matter of a few seconds or a minute that the car had pulled off the highway so what what's your explanation to all that your honor um there was evidence presented that that bennett consumed cannabis outside of the vehicle he testified to that fact so i believe that then there was sufficient basis for the circuit court to um there would have been a sufficient record the court doesn't have to accept that number one and number two the other aspect of it is we don't have any indication about the time we don't know how long the car was sitting there so if it is your argument which i understand you to have made maybe i misunderstood it that the rules applicable if the car it was a traffic stop because the car had been on the highway don't apply here even though it looks like the car had been in the highway very recently why wasn't it the defendant's burden to break that clear and it's fair to present any evidence of that point essentially forfeits that argument your honor the defense did argue um i believe it was in the the the motion to reconsider process that this wasn't on um a traffic stop on a public in public and um the state did not um object to to consideration of that argument as some sort of forfeiture and the state can forfeit forfeiture well what about no evidence on this point how long is the car there how long it had been in the parking lot and your honor that there there wasn't a statement on how long it had been in the parking lot but but it's the defendant's burden of proof isn't it it's a defendant's burden to show a constitutional violation in the absence of that evidence why should this court reject the findings of the trial court the defense does bear the ultimate burden in proving the motion to suppress um but considering the fact that that that bennett's testimony which again the circuit wasn't required to to accept but the fact that he had enough time um to consume cannabis on the premises at least indicates that the car had been stopped for some time and it wasn't immediately coming with respect to the nature of the property and the non-vehicle code prohibitions are you suggesting that as long as somebody is behind some closed business uh in the middle of the night that it's okay for them to use in that location if they've legally acquired the product oh thank you thank you for the question your honor first i would argue that that's not a public place as defined by the statute which isn't public in terms of it's not exclusive i mean you're not private you're not alone anyone could come there the same way you came there well the act specifically says nothing in this act shall prevent a private business from restricting cannabis use on its property including where motor vehicles are parked which would indicate that um that that even under under the act that it is it can be permissible unless the business owner um decides otherwise and if there are thank you for that answer you are out of time and we appreciate your argument we appreciate the argument for the state as well and the court will consider them and we now stand in recess and thank you again